CASE 21—PETITION EQUITY—OCTOBER 9.

# Bettis, &c., vs. Bailey, &c.

### APPEAL FROM GARRARD CIRCUIT COURT.

Replevin bonds signed and delivered to the sheriff *without date* are valid and effectual. The sheriff should fill up the date to correspond with the date of delivery. (*Logan vs. Doniphan*, 2 J. J. M., 252; *Clarke & Gaines vs. Bell*, 2 *Littell*, 162.) If the sheriff should date the bonds to a day before the delivery, executions cannot legally issue on such bonds until they are due, counting from the date of delivery; and if executions should issue before the bonds are properly due, such executions, and sales of land under and by virtue of executions thus issued, would pass no title to the purchasers who were plaintiffs in said executions.

R. M. & W. O. BRADLEY,                    For Appellants.

JAS. A. ANDERSON and S. TURNER,           For Appellees.

CHIEF JUSTICE PETERS DELIVERED THE OPINION OF THE COURT:

In July, 1862, a small tract of land in Garrard county, containing a fraction over fifty-eight acres, was purchased

by Logan as the friend of Mrs. Bettis, then a married woman, and under twenty-one years of age, from Baylor Jennings, at the price of one thousand one hundred dollars. Of this sum, five hundred and forty-six dollars and sixty-two cents were paid in satisfaction of two executions, then in the hands of G. E. Hackley, sheriff of Garrard county, against the estate of said Jennings, &c., and the residue was paid to Jennings himself, or to some of his creditors by his direction. The money paid for the land was the patrimony of Mrs. Bettis, derived from the estate of her father.

The appellees, Maret Leavel, administrator of James Hemphill, deceased, B. F. Jennings, Richardson, and W. C. Bailey, claim the same land, as purchasers at a sale thereof made by G. E. Hackley, sheriff as aforesaid, under and by virtue of divers executions in his hands against the estate of said Baylor Jennings and others, which issued on replevin bonds on the 26th of July, 1862, which bonds purport to have been executed and to bear date the 22d of April, 1862, and upon which said sheriff returned he had levied them on said tract of land on the 5th of December, 1862, and sold on the 26th of January, 1863 ; and on the 14th of August, 1863, said sheriff conveyed said land to the appellees.

Prior to the sale in January, 1863, of the land by the sheriff, Mrs. Bettis, by her next friend, filed her petition in equity against the plaintiffs in said executions, asking to be substituted in the place of Hudson and Schooler to the amount of their executions, and that, in the sale of the land, the amount of said executions should be ordered to be paid over to her.

After the execution of the deed by the sheriff to Bailey and others, they brought their action against Mrs. Bettis

and her husband for the land, who resist their right
thereto, upon the ground that the replevin bonds on
which said *fi. fas.* issued were ante-dated, and were not
in fact due when the land was sold and purchased by
them; that the sheriff's sale and deed passed no title to
them; and because of the fraudulent conduct of the
said sheriff and plaintiffs in the executions; and that
the levies were all made after the return day to which
said executions should have been returnable.   The two
causes were heard together, and a judgment rendered
canceling both deeds, ordering the land to be sold by
the master, and the amount which was paid by Mrs.
Bettis on Hudson's and Schooler's executions be refund-
ed to her, after deducting reasonable rents therefrom for
the time she occupied the land, and the balance to be
paid to said creditors *pro rata*.   Of which judgment all
the parties complain; but on this record Bettis and wife
are presented as appellants.

After a careful analysis of the facts as presented by
this record, we feel constrained to the conclusion that
the executions in favor of appellees, and by virtue of
which the land was sold, were not replevied on the 22d
of April, 1862, but that there is intrinsic evidence that
they must have been replevied after the 26th of that
month, in addition to the positive statement of Jennings
that they were replevied after that date.

It is a fact wholly unexplained, and although the
deposition of Hackley, the sheriff was taken in the
case, no offer or attempt to explain it is made, that he
returned on all of said executions that on *the* 26*th* of
April, 1862, they were levied on sixteen head of three-
year old steers, one yoke of oxen, two head of horses,
and four slaves, males and females, the property of A.

Bettis, &c., vs. Bailey, &c.

J. Jennings. This return is indorsed on some six or seven of said executions.

It was the duty of the sheriff to have levied said executions on the property of the defendant therein, if he failed to pay or replevy them within a reasonable time after they came to his hands. To have permitted the defendant to replevy said executions after they were levied would have been legal, and altogether proper; but to have levied them on the property of the defendant after they were replevied, as the returns on the executions import was done, would have been a violation of his duty, because the replevying of the executions was a satisfaction of them and the judgments upon which they issued; and then to have levied them would have subjected the sheriff to an action as a wrong-doer.

If the sheriff had authority to levy these executions, he had authority to sell the property levied upon; and it would have been an anomaly in proceedings of this character for the sheriff to levy upon and sell property under an execution which had been previously replevied, and the replevin bond effectual and not due; but what became of this property is not shown in this record. These returns, inconsistent and irreconcilable with a faithful discharge of his duties by the sheriff, are unexplained by any thing upon the executions themselves; and the only satisfactory or plausible explanation given to the transaction is found in the deposition of Baylor Jennings, who proves that on the second Saturday in June or July, 1862 (he is not certain which month), at a certain meeting in Garrard county, Hackley, the sheriff, came to him and told him he wanted him—said Baylor Jennings—to sign some replevin bonds as surety for his brother, A. J. Jennings; that he then declined to sign

them, but told the sheriff he would see his brother about it; that he did see his brother, who told him he wished him to sign the bonds, and he should never lose it, which he agreed to do; and on the following Monday Hackley came to see him on the subject of signing the bonds, and he told him that some judgments had gone against him, and he wanted to know of the sheriff, if he signed said bonds, whether it would interfere with his own debts, as he intended to sell his land and pay his own debts; and Hackley informed him it would not; that the bonds which he wanted him to sign for A. J. Jennings were blank bonds, and he would not date them until he went to the office and saw the judgments against said Baylor Jennings, and he would date the bonds so as not to interfere with said judgments; whereupon he signed them.

This is direct proof that the replevin bonds as to date were blank; and that evidence is uncontradicted, although Hackley, the sheriff, gave his deposition in the case; and furthermore, that they were signed in June or July by the surety, and then delivered by him to the sheriff; and being in blank, the mistake was made in filling the blank, which was done after the surety signed them. It could scarcely be probable that the sheriff would in fact levy the executions four days after they had been replevied.

It was not material to the validity of the bonds whether they were dated or not when they were signed by the surety; the *delivery* of them by him made them binding on him; they were effectual then as his deeds, and the sheriff should have filled the blanks with that date. (*Logan vs. Doniphan*, 2 J. J. Mar., 252–3; *Clarke & Gaines vs. Bell*, 2 *Littell*, 162–3.)

Dating the bonds from their delivery by the surety, it is apparent that they were not due, and no executions could have legally issued upon them as early as July,

Bettis, &c., vs. Bailey, &c.

1862, and a sale of the land under and by virtue of executions thus issued would pass no title to appellees, who were plaintiffs in said executions.

Besides, Logan proves that the sheriff was present when the conveyance was made by Baylor Jennings to appellants; knew what business the parties were engaged in, and did not speak of having any other than the executions in favor of Schooler and Hudson in his hands at the time; and if he then had the others in his hands, it is strange he did not speak of them when he received the money on those of Schooler and Hudson.

We are, from the foregoing facts, constrained to conclude that there was no lien on the land in favor of the plaintiffs in the other executions, when the conveyance was made to Mrs. Bettis, and she thereby acquired an unencumbered title to the same.

Wherefore, the judgment is reversed, and the cause remanded, with directions to dismiss the petition of appellees.